UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK W. KELLEY II,

      Plaintiff,                            Civil Action No. 12-10002

v.                                   HON.  THOMAS L. LUDINGTON
                                   U.S. District Judge
COMMISSIONER OF SOCIAL        HON. R.  STEVEN WHALEN
SECURITY,                      U.S. Magistrate Judge

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of

Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have

filed summary judgment motions which have been referred for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I

recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED, and

that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on July 8 and July 19, 2010 respectively,

alleging disability as of July 7, 2008 (Tr. 114-120, 121-127).  After the initial denial of the

claim, Plaintiff requested an administrative hearing, held on September 14, 2011 in Oak Park,

Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 33). Plaintiff, represented by attorney Joshua Moore, testified (Tr. 36-57), as did Vocational Expert ("VE") Elizabeth Pasikowski (Tr. 57-59). On October 4, 2011, ALJ Scallen found Plaintiff not disabled (Tr. 22). On November 8, 2011, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on January 2, 2012.

## BACKGROUND FACTS

Plaintiff, born November 1, 1981, was 29 when the ALJ issued his decision (Tr. 22, 114). He completed high school (Tr. 172) and worked previously as a customer account executive, escrow specialist, general laborer, and reviewer of real estate title documents (Tr. 173). His application for benefits alleges disability as a result of Acquired Immune Deficiency Syndrome ("AIDS"), medication side effects, depression, concentrational difficulties, and anxiety (Tr. 171).

### A.    Plaintiff's Testimony

Plaintiff testified that he graduated from high school and attended college (Tr. 36). He reported that his most recent job was working for a title company and that he stopped working altogether in 2007 (Tr. 37). Plaintiff stated that before the title company job, he was employed as a "national HUD reviewer," which required him to review mortgage documents (Tr. 37-38). He reported that he was terminated after contracting shingles (Tr. 38). He acknowledged that he collected unemployment between December, 2007 and "early" 2010, adding that he was actively looking for work during that period (Tr. 39).

Plaintiff reported disability due to shingles, fatigue, AIDS medication side effects, anxiety, and depression (Tr. 40-41). He stated that side effects consisted of "uncontrollable bowel movements," fatigue, nausea, dizziness, and intermittent chills and hot flashes (Tr. 41). He indicated that he experienced these side effects on a daily basis (Tr. 42). He characterized a "bad day" as one in which he could not get out of bed, estimating that he experienced five bad days every week (Tr. 42-43). In addition to medication side effects, he alleged symptoms of depression and anxiety approximately five times a week, adding that during an anxiety attack, he became paranoid (Tr. 44). He stated that he coped with anxiety by taking deep breaths, applying pressure to his ear, and taking medication (Tr. 44-45).

Plaintiff testified that he currently lived with his sister (Tr. 45). He stated that he was independent in self care activities part of the time, but that his sister also helped him on occasion (Tr. 45-46). He stated that he did not drive or perform household tasks (Tr. 46). He reported good relationships with friends and with his sister and her family (Tr. 47). He denied leaving the house and reported that he spent the majority of his day sleeping and watching television (Tr. 47). He indicated that he helped his nieces and nephews with their homework (Tr. 48-49). Plaintiff alleged that he was unable to lift more than 10 pounds due to fatigue and weakness (Tr. 49). He denied problems sitting or standing, but reported that he was unable to walk more than half a block without becoming short of breath (Tr. 50). He denied problems stooping, kneeling, crouching, or crawling, but noted that as a result of shingles, he experienced intermittent shaking of the arms and legs (Tr. 51-52). He denied manipulative limitations or problems reading or calculating (Tr. 52-53).

*Before examining his client, Plaintiff's counsel amended the alleged onset of disability date to January, 2010* (Tr. 55).

Plaintiff reported that he had a rash on his face and groin and had experienced oral thrush on more than one occasion (Tr. 55).  He stated that in the past two years he had lost 30 to 35 pounds (Tr. 56).  He indicated that he required multiple naps each day, lasting approximately one to two hours (Tr. 56).  In response to further questioning by the ALJ, Plaintiff denied frequent headaches (Tr. 56).

### B.   Medical Evidence[1]

### 1.  Treating Sources

In June, 2008, Plaintiff was diagnosed with human immunodeficiency virus ("HIV") (Tr. 195).  He reported occasional lightheadness, a decreased appetite, and oral thrush (Tr. 195-196).  A physical examination was otherwise unremarkable (Tr. 196).  December, 2008 treating notes by Jonathan Cohn, M.D.  reference the June, 2008 HIV diagnosis (Tr. 186).  Dr. Cohn noted that Plaintiff was "doing well on antiretroviral therapy" and felt "much improved, stronger, healthier,"  with a decrease in facial rash and resolution of oral thrush (Tr. 186).   Plaintiff denied constipation, diarrhea, vomiting, cold or heat intolerance, weakness, or psychiatric symptoms (Tr. 186-187).  Lab results showed an improvement in CD4 from 38 to 92[2] (Tr. 188).

---

[1]Records pertaining to Plaintiff's condition before the amended onset date of January 1, 2010 are included for background purposes.

[2]

"CD4 is an infection-fighting white blood cell that coordinates the immune response.

In March, 2010, Plaintiff sought emergency treatment after noticing blood in his vomit (Tr. 190-191). He reported feeling nauseated after eating at a fast food restaurant and drinking two beers (Tr. 191). Plaintiff reported that his CD4 count was "in the 400[s]" (Tr. 191). A physical examination was unremarkable (Tr. 191). Plaintiff stated that he was "completely asymtomatic" (Tr. 192). The blood was attributed to an esophageal injury from dry-heaving (Tr. 192). Kerin Jones, M.D. examined Plaintiff, noting a "good CD4 count" (Tr. 193). Plaintiff reported that he felt well (Tr. 194). An examination conducted later the same month was negative for skin lesions, but positive for a rash and fungus on the scrotum (Tr. 210).

In November, 2010, Plaintiff denied night sweats, chills, or weight loss (Tr. 212). He admitted that he had missed some medication doses (Tr. 212). Noting that recent test results showed a CD4 of 78, Jerry Burns, N.P. advised Plaintiff not to miss doses (Tr. 214). The same month, Plaintiff's psychological self-assessment showed that he was experiencing "moderate to severe distress" (Tr. 262). Plaintiff was advised to seek psychological therapy (Tr. 264). In March, 2011, lab results showed a CD4 of 84 (Tr. 215). An examination conducted from the same month was negative for skin lesions, but positive for a rash and fungus on the scrotum (Tr. 210). In July, 2011, Plaintiff's mental health progress since

---

HIV infects and kills CD4 cells, weakening the immune system. CD4 count is a useful indicator of immune system health and HIV/AIDS progression. A normal CD4 count is approximately 500 to 1,400 cells/mm of blood, but individual counts can vary." *Edel v. Astrue,* 2009 WL 890667, *3 (N.D.N.Y. March 30, 2009)

November, 2010 was deemed slower than expected (Tr. 268). In August, 2011, a psychological intake assessment noted complaints of mood swings, sleep disturbances, and paranoia (Tr. 273). Plaintiff was well groomed and exhibited appropriate behavior, judgment, and insight (Tr. 274). He was assigned a GAF of 64[3] (Tr. 277).

## 2. Non-Treating Sources

In January, 2011, F. Qadir, M.D. performed a psychiatric examination of Plaintiff on behalf of the SSA (Tr. 197-199). Plaintiff was cooperative with a normal affect and a sad mood (Tr. 198). He reported an average relationship with his family and "good contact" with neighbors (Tr. 197). Plaintiff reported doing light household tasks and cooking (Tr. 198). He reported that on "bad days," he stayed in bed due to fatigue (Tr. 198). He exhibited a normal memory and was fully oriented (Tr. 198). He was diagnosed with adjustment disorder with depressed mood and marijuana abuse (Tr. 199). Dr. Qadir assigned him a GAF of 48-50, stating that "[t]he combination of symptoms of his medical condition and depression can cause problems with his ability to work"[4] (Tr. 199).

---

[3]

GAF scores in the range of 61-70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders–Text Revision at 34("DSM–IV–TR" ) (4th ed. 2000).

[4]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

The same month, Ernesto Bedia, M.D. performed a physical examination on behalf

of the SSA (Tr. 201-207).  Plaintiff reported intermittent headaches for the past 10 years (Tr.

201).  He stated that he experienced "uncontrolled bowel movements since starting retroviral

therapy" (Tr. 201).  He denied bloody stools (Tr. 201).  He reported depression and anxiety

"secondary to his health condition" (Tr. 201).  He exhibited good muscle tone and no joint

tenderness (Tr. 202).  Dr. Bedia noted the absence of a skin rash (Tr. 202).  He concluded

that Plaintiff did not experience any physical restrictions (Tr. 203).

### C.    Vocational Expert Testimony

VE Pasikowski classified Plaintiff's past relevant work as a laborer as unskilled at the

light to medium level of exertion; customer service representative, semiskilled/sedentary; and

escrow specialist, semiskilled/sedentary[5] (Tr. 57-58).  The ALJ then posed the following set

of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [M]edium exertional level.  Also . . . no repetitive pushing and pulling, no
> climbing of ropes, ladders and scaffolds, frequent balancing, no repetitive
> pushing and pulling, no climbing of ropes, ladders and scaffolds, frequent
> balancing, no repetitive . . . handling and fingering.  Also, avoid concentrated
> exposure to unprotected heights, moving machinery and also limit to simple,
> routine, repetitive tasks.  With those limitations alone, could he do his past
> relevant work? (Tr. 58).

---

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at
a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that
exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent
lifting or carrying of objects weighing up to 50 pounds.

Based on the above restrictions, VE found that Plaintiff would be unable to perform his past relevant work or any work at the medium exertional level (Tr. 58). She found however that the above limitations did not preclude the exertionally light work of greeter (1,400 positions in the regional economy); gate tender (1,600); and information clerk (1,300) (Tr. 58-59). She found that at the sedentary level, the individual could work as a visual surveillance monitor (1,700); information clerk (1,200); and ID clerk (1,400) (Tr. 59).

### D.    The ALJ's Decision

Citing Plaintiff's treating records, ALJ Scallen found that Plaintiff experienced the severe impairments of HIV/asymptomatic and an adjustment disorder but that neither of the impairments met or equaled a listed impairment under 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 16). He found that Plaintiff experienced only mild restrictions in activities of daily living and social functioning but moderate deficiencies in social functioning and concentration, persistence, or pace (Tr. 16-17). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally medium work with the following additional limitations:

> [N]o repetitive pushing or pulling; no climbing ropes, ladders or scaffolds; frequent balancing; no repetitive handling or fingering; avoid concentrated exposure to unprotected heights and moving machinery; simple, routine, repetitive tasks (Tr. 17).

Citing the VE's findings, the ALJ found that while Plaintiff could not perform any past relevant work, he could perform the work of a greeter, information clerk, and identification clerk (Tr. 21-22).

The ALJ discounted Plaintiff's allegations of disabling limitations, noting that in November, 2010, Plaintiff denied new health problems (Tr. 19). He cited treating and consultive examination findings showing normal concentrational abilities, an appropriate affect, and goal oriented speech (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Step Three Determination[6]

Plaintiff argues that  substantial evidence does not support the ALJ's determination. *Plaintiff's Brief* at 10-14, *Docket #9.*  He asserts that the ALJ made "several confusing and contradictory statements," and "seemingly denies the fact that [Plaintiff] suffers from full blown AIDS."  *Id.* at 11.  Plaintiff argues that medical evidence supporting disability is "overwhelming." *Id.*  He cites "consistent CD4 counts under 100," and the documented symptoms of rashes, oral thrush, and lesions supports a disability finding (Tr. 11).   He asserts that the ALJ erred by failing to find him disabled at Step Three of the administrative sequence.  *Id.* at 17-18.

At Step Three of the administrative sequence, section 14.00 of the Listings addresses adult immune system disorders. 20 C.F.R, Part 404, Subpart P, App. 1, §14.00.  Section 14.08K governs HIV-related impairment and can be met by showing "(1) 'repeated ... manifestations of HIV infection,' (2) 'resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia),' and (3) one of the following at a marked level: (a) limitation of activities of daily living, (b) limitation in maintaining social functioning, or (c) limitation in completing tasks in a timely manner due to deficiencies in concentration,

---

[6]Plaintiff's contention that the ALJ's conclusions were unsupported by the record (argument **A.** ) and assertion that the Step Three determination was erroneous (argument **C.**) rely on the same evidence and are discussed in tandem.

persistence, or pace." *Goodale v. Astrue,* 2012 WL 6519946, \*4 (N.D.N.Y. December 13, 2012)(*citing* § 14.08K).

Contrary to Plaintiff's argument, the Step Three analysis was well supported and explained. Citing Dr. Bedia's January, 2011 findings, the ALJ noted that Plaintiff did not exhibit "excessive fatigue, substantial weight loss, nausea, fever or malaise" in support of the determination that Plaintiff did not meet Listing 14.08K (Tr. 16). November, 2010 treating likewise show a lack of symptomology (Tr. 212-214). While Plaintiff notes that he experienced the intermittent symptoms of "facial rash, oral candidiasis, and perianal lesions," *Plaintiff's Brief* at 11, the medical records do not show that he experienced any symptomology consistently. Likewise, Plaintiff's later contention that he also experienced shingles, diarrhea, and fatigue, *Plaintiff's Brief* at 18, stands at odds with treating records (no fatigue or diarrhea) and Dr. Bedia's consultive findings (no rash) (Tr. 212-214, 215, 202). Moreover, even assuming the presence of "significant" symptomology, Plaintiff's Step Three argument is defeated by his failure to show that he experienced marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace.

Plaintiff also argues that the ALJ failed to acknowledge that he experienced "full blown AIDS." *Plaintiff's Brief* at 11. He asserts that his CD4 counts were "consistent[ly]" under 100. *Id.* He criticizes the ALJ for referring to the condition as HIV or HIV/AIDS rather than acknowledging that diagnosis of AIDS. *Id.* at 11, 17-18 (*citing* Tr. 19). However,

Plaintiff does not explain the significance of a CD4 count in tracking the progression of HIV/AIDS.[7]

AIDS is generally diagnosed when the CD4 count falls below 200. *E.E.O.C. v. Lee's Log Cabin, Inc.,* 546 F.3d 438, 446 (7th Cir. 2008) (*citing* Center for Disease Control, http://www.cdc.gov/hiv/resources/brochures/livingwithhiv.htm). First, Plaintiff's contention that his CD4 level were consistently below 100 during the relevant period is not reflected by the medical records.   The record does show that Plaintiff's CD4 levels dipped to 78 in November, 2010 after he stopped taking his medication the previous spring (Tr. 212).   In March, 2011 he showed a reading of 84 (Tr. 212, 215).   However, in March, 2010 (before stopping his medication) Plaintiff reported to emergency room personnel that his CD4 count was "in the 400[s]" (Tr. 191).

Second, Plaintiff's argument that the ALJ erred by using the term HIV at Step Two and Three of his analysis instead of "AIDS" does not constitute error.  "HIV and AIDS are

---

[7]

Plaintiff also asserts that "[t]here is no discussion of the objective medical evidence in the decision, no discussion of the factual basis for the decision, and not a single discussion in the decision of special factor such as medication side effects." *Plaintiff's Brief* at 11.  To the contrary, the ALJ discussed the objective medical evidence, both treating and consultive, at length (Tr. 16, 18-20).  Moreover, he addressed Plaintiff's alleged medication side effects and other limitations, including depression, concentrational problems, unstable balance, anxiety, uncontrolled bowels, headaches, and the ability to get out of bed on "bad days" (Tr. 18, 19, 20).

Plaintiff also argues, in effect, that the ALJ erred by failing to articulate the weight given to the opinion evidence.  First, no treating source offered opinion evidence of Plaintiff's limitations or found that he was disabled.  Second,  the ALJ provided an accurate summation of the treating records.  Third, the ALJ expressly adopted the evaluations of non-treating sources on the basis that the treating source records and other evidence did not show greater limitations (Tr. 20).

not separate diseases." *E.E.O.C. v. Lee's Log Cabin, Inc.,* 546 F.3d at 446. "[P]ersons with AIDS do not cease to be HIV positive; once someone is HIV positive or is infected with HIV, she is always HIV positive. Nor do persons with AIDS no longer suffer from HIV infection." *Id.* at 446-447.

Third, the fact that the CD4 count dipped to 78 at one point did not require the ALJ to make a disability finding. AIDS "does not necessarily represent a change in debilitation from the earlier stages of HIV." *Id.* "Rather, individuals suffer from the effects of HIV/AIDS at various stages in different ways." *Id.* Notably, the same month Plaintiff's CD4 levels dropped to 78, he denied night sweats, chills, weight loss, or headaches (Tr. 212-213). March, 2011 treating notes show similar results (Tr. 209). Because substantial evidence supports the finding that Plaintiff was either asymptomatic or experienced, at most, intermittent symptoms, these arguments do not provide a basis for remand. *See Roman v. Barnhart*, 477 F.Supp.2d 587, 598 (S.D.N.Y. 2007)(despite low CD4 levels, the lack of consistent symptomology supported a non-disability finding).

**B. Hypothetical Question/RFC**

Plaintiff also argues, in effect, that neither the hypothetical question to the VE nor the RFC was supported by substantial evidence. *Plaintiff's Brief* at 15-17. He contends that "[t]here is not a scintilla of evidence" to support the finding that he could perform exertionally medium work. *Id.* at 15-16. He faults the ALJ for failing to include non-exertional limitations in the RFC. *Id.* Plaintiff contends that the hypothetical question did

not account for his moderate limitations in concentration, persistence, and pace as found by the ALJ.  *Id.* at 16-17.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir.2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (citing 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. *See* 20 C.F.R. § 404.1545(a) (RFC must be based on all relevant evidence).

The ALJ's finding that Plaintiff could meet the exertional requirements for medium work is adequately supported by the record.   The ALJ cited the January, 2011 consultive examination in discussing the rationale for the finding that Plaintiff could perform medium work:

> Dr. Bedia noted the claimant's allegations of a positive HIV status with symptoms of headaches, uncontrolled bowel movements, depression and anxiety. The physical examination revealed complaints of decreased appetite. The doctor noted evidence of erythema with irregular borders and overlying white patches in his mouth.  However, the [remainder] of the examination appeared to be within normal limits. The claimant exhibited good muscle tone and mass.  There was no evidence of tenderness or erythema in the joints and he had full range of motion.  He exhibited full motor strength of 5/5 bilaterally and he walked with a normal gait.  His tandem walk, toe heel walk was normal and he exhibited normal coordination and sensation (Tr. 19 *citing* 201-203).

While the ALJ adopted Dr Bedia's finding, the RFC limiting Plaintiff to medium work with a number of postural, environmental, and manipulative limitations was more restrictive than Dr. Bedia's finding of no physical restriction (Tr. 203).    As discussed above, treating

-15-

records stating that Plaintiff did not experience fatigue or other exertionally-related limitations do not support the argument that Plaintiff was incapable of performing medium work.

The related argument that the RFC contained no non-exertional limitations is without merit. To the contrary, the RFC included a number of non-exertional limitations by precluding work requiring the climbing of ropes, ladders or scaffolds; frequent balancing; repetitive handling or fingering; concentrated exposure to unprotected heights and moving machinery; and limiting Plaintiff to "simple, routine, and repetitive tasks" (Tr. 17); *See* 20 C.F.R. § 404.1569a (c) (i- ii, vi). Notably, although Plaintiff was found to be capable of exertionally medium work, the hypothetical question's non-exertional qualifiers limited him a range of light and sedentary work (Tr. 58).

Plaintiff contends that the hypothetical question ought to have included allegations of "severe fatigue, need to lie down, [and] severe medication side effects." *Plaintiff's Brief* at 15. However, the ALJ noted that allegations of severe fatigue were contradicted by treating records showing that Plaintiff denied fatigue or medication side effects on multiple occasions (Tr. 20, 209, 212). The ALJ also observed that Plaintiff's testimony at the hearing was inconsistent with his earlier statements (Tr. 20). Plaintiff testified that he required his sister's help in caring for personal needs, but stated earlier that he was independent in self-care (Tr. 45-46, 180). Likewise, his earlier statement that he was able to shop for groceries contradicted his testimony that he left his house only on rare occasions (Tr. 47, 181). Having discussed his reasons for rejecting Plaintiff's allegations of limitation, he was not obliged to

include them in the hypothetical question.  *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6ᵗʰ Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)(ALJ not required to use discredited claims in the question to the VE).

Finally, Plaintiff cites *Ealy v. Commissioner of Social Security,* 594 F.3d 504 (6ᵗʰ Cir. 2010) for the proposition that the hypothetical question did not account for his moderate deficiencies in concentration, persistence or pace.[8]  *Plaintiff's Brief* at 16.

 In *Ealy,* the Court found that the hypothetical limitations of "simple repetitive tasks" was insufficient to account for the claimant's moderate deficiencies in concentration, persistence, or pace ("CPP").   However, *Ealy*  does not hold that the terms "simple, repetitive," or similar descriptives are intrinsically inadequate to address moderate CPP deficiencies.  Rather, *Ealy* held that the hypothetical limitations of "simple, repetitive"(drawn from a non-examining medical source) impermissibly truncated the same source's overall conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516.  The position that "simple and repetitive" or synonymous terms are *always* insufficient to address moderate CPP deficiencies (even where the record does not support more stringent limitations) reflects an erroneous reading of *Ealy.*   To the contrary, the evidence of record

---

[8]Plaintiff states erroneously that the ALJ also found moderate limitations in social functioning.  *Plaintiff's Brief* at 16.   The ALJ found only mild limitations in social functioning (Tr. 17).

-17-

and the ALJ's opinion must be considered in their entirety in determining whether the

hypothetical limitations adequately describe the claimant's limitations. *Smith v. Halter,* 307

F.3d 377, 379 (6th Cir.2001); *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, \*11

(E.D.Mich.2011)("no bright-line rule" that moderate concentrational deficiencies require the

inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No.

07–13138, 2008 WL 2478325, at \*7 (E.D.Mich. 2008)).

    In this case, the hypothetical qualifiers "simple, routine, [and] repetitive tasks" were

sufficient to account for Plaintiff's concentrational limitations (Tr. 58). The ALJ cited Dr.

Qadir's findings that Plaintiff exhibited a normal affect and memory with good hygiene and

grooming (Tr. 20, 198). An August, 2011 psychological intake assessment states that

Plaintiff exhibited appropriate behavior, judgment, and insight (Tr. 274). None of the

examining sources observed concentrational limitations. While Plaintiff faults the ALJ for

failing to cite Dr. Qadir's remark that "[t]he combination of symptoms of his medical

condition and depression can cause problems with his ability to work" (Tr. 199), the ALJ

acknowledged the presence of depression at Step Two of his analysis and by restricting

Plaintiff to unskilled, simple, routine, and repetitive tasks, accompanied by a number of

postural, environmental, and manipulative restrictions (Tr. 58). Plaintiff's criticism that

ALJ erred by failing to quote Dr. Qadir's statement is not well founded, given that the

administrative opinion contains a thorough discussion of the treating and consultive records.

*See Kornecky v. Commissioner of Social Security,* 2006 WL 305648, \*8–9 (6th Cir.2006)(

*citing Loral Defense Systems–Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999))("it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party'").

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's legitimate concerns brought on by the diagnosis of HIV/AIDS. While the non-disability finding for the relevant period is well articulated and clearly supported by substantial evidence, Plaintiff is not barred from filing a new claim if he believes his condition has worsened since the date of the ALJ's decision. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988).

Based on the record before me, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 8, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 8, 2013.

s/Johnetta M. Curry-Williams
Case Manager